UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
JORDAN RANDOLPH,                                    :
                                                    :
                              Plaintiff,            :
                                                    :        REPORT AND
              -against-                             :        RECOMMENDATION
                                                    :
TIMOTHY BOUCHARD, JOHN JOHNSON,                     :        No. 23-CV-08981-RPK-JRC
GREGORY O'CONNOR, and JOHN HICKEY,                  :
                                                    :
                              Defendants.           :
-------------------------------------------------------------------- x

JAMES R. CHO, United States Magistrate Judge:

Plaintiff Jordan Randolph ("plaintiff" or "Randolph"), proceeding *pro se*, brings this

§ 1983 action against four employees of the Suffolk County Correctional Facility (collectively,

"defendants").  Plaintiff alleges that defendants Timothy Bouchard ("Bouchard"), John Johnson

("Johnson"), and Gregory O'Connor ("O'Connor") violated his Eighth Amendment rights by

failing to protect him against an attack by another inmate, and that defendant John Hickey

("Hickey") violated plaintiff's Fourteenth Amendment due process rights by failing to afford him

the requisite procedural safeguards in connection with a disciplinary hearing following the

attack.

Now pending before this Court, on a referral from the Honorable Rachel P. Kovner, is

defendants' motion dismiss the complaint pursuant to Rule 12(b)(6) for failure to state a claim

upon which relief can be granted.  *See* Mot. to Dismiss, Dkt. 14 (refiled at Dkt. 21); Order

Referring Mot. dated Oct. 1, 2024.  Defendants move to dismiss plaintiff's complaint on the

grounds that plaintiff:  (1) failed to exhaust the available administrative remedies before filing

the present action as required by the Prison Litigation Reform Act ("PLRA"); (2) failed to plead

adequately the elements of a failure to protect claim; and (3) failed to plead any personal

involvement of defendant Hickey in connection with plaintiff's disciplinary hearing.  *See* Mem. of Law in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mem.") at 2, Dkt. 14-8.

As set forth below, this Court respectfully recommends granting the motion to dismiss the failure to protect claim against Bouchard, Johnson, and O'Connor with leave to amend, and denying the motion to dismiss the due process claim against Hickey.

## BACKGROUND

### I.    Factual Background

The following facts are drawn from the complaint (Dkt. 1) and the filings that plaintiff submitted in opposition to defendants' motion to dismiss (Dkts. 19, 22, 24), and are taken as true for purposes of this report and recommendation.

### A.  The Parties

At all times relevant to this case, plaintiff was incarcerated at Suffolk County Correctional Facility ("SCCF") in Suffolk County, New York.  Compl. at ECF page[1] 2 (Venue & Jurisdiction ¶ 1; Statement of Facts ¶ 1).  During the relevant events, defendants were SCCF employees.  *See* Compl. at ECF pages 1–2 (Parties ¶¶ 2–5).  Specifically, Bouchard was a Correctional Officer, Johnson was a Correctional Sergeant, O'Connor was a Correctional Lieutenant, and Hickey was a Correctional Hearing Officer.[2]  *Id.*

### B.  The October 5th Attack

On October 5, 2022, during "recreation period," plaintiff alleges another inmate attacked him "without being provoked."  Compl. at ECF page 3 (Statement of Facts ¶ 3).  At the time, plaintiff did not know his attacker, but he later learned that his attacker was Rahmel McClinton

---

[1] Cites to "ECF page" refer to the page number assigned by the Electronic Case Filing ("ECF") system.

[2] Plaintiff also refers to Hickey as a Correctional Officer Sergeant.  *See* Letter to the Court dated Feb. 6, 2024, Dkt. 9.

("McClinton").  Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n Mem."), Dkt. 19 (refiled at

Dkt. 21) at ECF page 3 (Statement of Facts ¶ 1).  Plaintiff and McClinton had been "in the

housing area with each other for a couple of months before the attack occurred."  *Id.*  Plaintiff

had not been involved in any altercations with McClinton or other inmates before the October

5th attack.  Compl. at ECF page 4 (Statement of Facts ¶ 10).

At the time of the attack, plaintiff was seated at a table close to where Bouchard "was

suppose[d] to be stationed."  *Id.* at ECF page 3 (Statement of Facts ¶ 3).  According to plaintiff,

Bouchard would have been able to see the attack if he had been at his assigned post.  *Id.*  Instead

of being at his post, Bouchard was on "a tour of the housing area" with Johnson and O'Connor

when the attack occurred.  Pl.'s Opp'n Mem. at ECF page 4 (Statement of Facts ¶ 4).  Because

Bouchard had left his post to tour the housing unit with Johnson and O'Connor, they did not

witness the attack and were not present to intervene.  Compl. at ECF page 3 (Statement of Facts

¶¶ 6, 8).  Only after the attack did Bouchard, Johnson, and O'Connor arrive at the scene, which

caused a "scuffle" and the inmates were "ordered to their cells."  *Id.* (Statement of Facts ¶ 7).

After the attack, plaintiff was taken to the infirmary and examined, and was then

"removed to another housing location" out of fear of retaliation against him by other inmates

associated with McClinton.  *Id.* at ECF page 4 (Statement of Facts ¶ 10).

**C. Defendants' Alleged Knowledge of McClinton's Violent Tendencies**

According to plaintiff, the alleged assailant—McClinton—had been "prescribed mental

health medication," and had been removed from another facility—Yaphank Correctional

Facility—"for the same activity."  Compl. at ECF pages 3–4 (Statement of Facts ¶¶ 8, 9).

Plaintiff further alleges that SCCF staff members were "clearly aware of [McClinton's] violent

nature and behavior" and his "active gang activities."  *Id.* at ECF page 4 (Statement of Facts

¶¶ 9, 11).  Plaintiff alleges that Bouchard, Johnson, and O'Connor had access to information in a computer "database" regarding McClinton's "mental health, gang affiliation and violent conduct" before placing McClinton in the same housing unit as plaintiff.  Pl.'s Opp'n Mem. at ECF page 7 (Reply to Defendant[s'] Point ¶ 1).  Plaintiff further alleges that the SCCF "correctional officials and employees possessed the necessary information to foresee a[n] attack against the plaintiff[.]"  *Id.* at ECF page 15.

### D. Plaintiff's Disciplinary Hearing

On October 26, 2022, approximately three weeks after plaintiff's altercation with McClinton, plaintiff participated in a disciplinary hearing related to the October 5th attack.  *See* Compl. at ECF page 4 (Statement of Facts ¶ 13); Pl.'s Opp'n Mem. at ECF page 4 (Statement of Facts ¶ 5).  According to plaintiff, Hickey conducted the disciplinary hearing.  *See* Letter to the Court dated Feb. 6, 2024, Dkt. 9; Pl.'s Opp'n Mem. at ECF page 4 (Statement of Facts ¶ 5); Pl.'s Opp'n Mem. Ex. F ("Disciplinary Hearing Report"), Dkt. 19 at ECF page 33.  Plaintiff alleges that he did not receive a "misbehavior report" in a "timely manner," and that the signature on the misbehavior report allegedly served on plaintiff was forged.  *See* Pl.'s Opp'n Mem. at ECF page 3 (Summary Review ¶¶ 5, 6); Compl. at ECF page 4 (Statement of Facts ¶¶ 13, 14).  Plaintiff "was not allowed to give a list of witnesses to call" during the disciplinary hearing and "was further deprived [of] the right to present documented video evidence of the attack to show that the plaintiff was struck first and was unable to defend himself."  Compl. at ECF pages 4–5 (Statement of Facts ¶¶ 13, 15); *see also* Pl.'s Opp'n Mem. at ECF page 3 (Summary Review ¶ 6).

At the disciplinary hearing, plaintiff was "found guilty of all the charges" and "penalties" were "imposed."  Compl. at ECF page 5 (Statement of Facts ¶ 16).  Plaintiff "was not given any appeal forms or documents to challenge the decision" rendered at the disciplinary hearing.  *Id.*

After the hearing, plaintiff alleges that he was "confined illegally for more [than] 210 days, because the housing employees marked it down as part of a hearing disposition that was never imposed by the hearing officer." *Id.* (Statement of Facts ¶ 17). Plaintiff further appears to allege that, during that time, he was housed as if he were assigned to the "special housing unit." *Id.*

## II.    Procedural History

On December 5, 2023, plaintiff commenced this action naming as defendants Bouchard, Johnson, and O'Connor. *See* Dkt. 1. Plaintiff also identified the disciplinary hearing officer as a "John Doe" defendant. *See id.* On December 11, 2023, the Court ordered the Suffolk County Attorney to identify the John Doe defendant who conducted the October 26, 2022 disciplinary hearing. Dkt. 6. The Order further noted that once the information was provided to the Court, the complaint would "be deemed amended to reflect the full name of the unnamed Defendant." *Id.*

On January 18, 2024, the Suffolk County Attorney identified the following two "individuals who participated" in the October 26, 2022 hearing: "C.O. Sgt. John Hickey, #S-189, the hearing sergeant; and C.O. Peter Brown, #1655, the hearing C.O." Dkt. 8.

On January 19, 2024, the Court forwarded the names of the two officers to plaintiff and instructed plaintiff to identify the individual he intended to name in the complaint. *See* Order dated Jan. 19, 2024. On February 6, 2024, plaintiff advised the Court that he intended to name C.O. Sgt. John Hickey, #S-189, "who conducted the disciplinary proceeding," in his complaint. *See* Dkt. 9. After receiving plaintiff's letter, Dkt. 9, the Clerk of Court prepared a summons for Hickey and all four defendants were served on March 29, 2024. *See* Dkt. 11.

On May 20, 2024, defendants filed their motion to dismiss the complaint for failure to state a claim. *See* Mot. to Dismiss, Dkt. 14 (refiled at Dkt. 21). The motion was fully briefed on

October 18, 2024.  *See* Pl.'s Opp'n Mem., Dkt. 19[3]; Reply Br. in Further Supp. of Mot. to

Dismiss ("Defs.' Reply Br."), Dkt. 23.  On January 15, 2025, plaintiff filed a sur-reply to

defendants' motion to dismiss.  *See* Reply to Defs.' Mem. of Law in Further Supp. of the Mot. to

Dismiss ("Pl.'s Sur-Reply"), Dkt. 24.  Defendants moved to strike plaintiff's sur-reply.  *See*

Dkt. 25.

STANDARDS OF REVIEW

### I.    Rule 12(b)(6) Motion to Dismiss

To survive a motion to dismiss, a complaint "must contain sufficient factual matter,"

which if "accepted as true, . . . state[s] a claim to relief that is plausible on its face."  *Ashcroft v.

Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570 (2007)).  "A claim is facially plausible when the alleged facts allow

the court to draw a 'reasonable inference' of a defendant's liability for the alleged misconduct."

*Wahid v. Mogelnicki*, 406 F. Supp. 3d 247, 248 (E.D.N.Y. 2017) (quoting *Iqbal*, 556 U.S.

at 678).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to

relief requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do."  *Twombly*, 550 U.S. at 555 (alteration in original) (internal quotation

marks and citations omitted).  "When evaluating a motion to dismiss under Rule 12(b)(6), a court

'accept[s] all factual allegations in the complaint as true and draw[s] all reasonable inferences in

favor of the plaintiff.'"  *Bunting v. Gap, Inc.*, 714 F. Supp. 3d 152, 155 (E.D.N.Y. 2024)

---

[3] Defendants refiled plaintiff's opposition (Dkt. 19) with their fully-briefed motion to dismiss on October 18, 2024. *See* Dkt. 22.

(Kovner, J.) (alterations in original) (quoting *Olson v. Major League Baseball*, 29 F.4th 59, 71 (2d Cir. 2022)).

## II.    *Pro Se* Pleadings

"Where, as here, the plaintiff is proceeding *pro se*, courts are obliged to construe the plaintiff's pleadings liberally." *Giannone v. Bank of Am., N.A.*, 812 F. Supp. 2d 216, 219 (E.D.N.Y. 2011) (cleaned up) (quoting *McCluskey v. N.Y. State Unified Court Sys.*, No. 10-CV-2144, 2010 WL 2558624, at *2 (E.D.N.Y. June 17, 2010)).  Accordingly, a *pro se* complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), and "should be read to 'raise the strongest arguments that [it] suggest[s],'" *Wahid*, 406 F. Supp. 3d at 249 (quoting *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013)).  "This is particularly so when the *pro se* plaintiff alleges that [his or] her civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).  Thus, the "dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." *Id.* (quoting *Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008)).

## III.    Materials Outside of the Pleadings

Where a defendant submits materials outside of the pleadings in connection with a motion to dismiss, "the court must either disregard the materials outside the pleadings or, after giving the parties a reasonable opportunity to present all the material that is pertinent to the motion, convert the motion to dismiss into one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure." *Ebomwonyi v. Sea Shipping Line*, 473 F. Supp. 3d 338, 345 (S.D.N.Y. 2020) (internal quotation marks and citations omitted), *aff'd*, 2022 WL 274507 (2d

Cir. Jan. 31, 2022); *see also Livnat v. Lavi*, No. 96-CV-4967, 1998 WL 43221, at *2 (S.D.N.Y.

Feb. 2, 1998) ("[W]here a District Court is provided with materials outside the pleadings in the

context of a 12(b)(6) motion to dismiss, it may exclude the additional materials and decide the

motion on the complaint alone or convert the motion to one [for] summary judgment under Fed.

R. Civ. P. 56 and afford all parties the opportunity to present supporting material." (internal

quotation marks and citation omitted)).

Where, as here, the plaintiff is *pro se*, converting the motion to dismiss to a motion for

summary judgment is only appropriate where the *pro se* plaintiff has been served with the

required notice pursuant to Local Civil Rule 12.1.  *See Hargrove v. New York City Sch. Const.*

*Auth.*, No. 11-CV-06344, 2013 WL 2285173, at *4 (E.D.N.Y. May 23, 2013) ("Since defendants

failed to provide the required notice to the *pro se* plaintiff in this case, the Court should not

convert the instant motion into one for summary judgment."); *Wiggins v. Figueroa*, No. 13-CV-

1731, 2015 WL 729730, at *1 (E.D.N.Y. Feb. 18, 2015) (finding that converting defendants'

motion to dismiss to a motion for summary judgment was "proper *because* Defendants provided

Plaintiff with a Local Civil Rule 12.1 notice" (emphasis added)).

Here, defendants filed exhibits and an affidavit in support of their motion to dismiss, but

failed to provide plaintiff with the required notice under Local Civil Rule 12.1.  *See* Dkt. 14

(letter to plaintiff describing the materials appended to the motion to dismiss but failing to warn

plaintiff that the motion could be converted to a motion for summary judgment).  Thus, this

Court does not consider the materials appended to defendants' motion to dismiss.  *See, e.g.*, *Scott*

*v. Warden & Adm'r of Jurisdiction Correction Dep't & Med. Dep't*, No. 08-CV-5729, 2010 WL

3785252, at *5 (S.D.N.Y. Aug. 23, 2010) (holding that, where defendants failed to provide the

required Rule 12.1 Notice, "the Court cannot consider the additional information set forth in

[the] Warden['s] affidavit").

However, in addition to considering the facts alleged in the complaint, the Court may consider "documents attached to the complaint as exhibits . . . and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)). In addition, "in the Second Circuit, a *pro se* plaintiff's papers [filed] in response to a defendant's motion to dismiss for failure to state a claim may be considered as effectively amending the allegations of his complaint . . . to the extent those papers are consistent with the allegations in the complaint." *Solomon v. Hum. Servs. Coal. of Tompkins Cnty. Inc.*, No. 11-CV-226, 2012 WL 3996875, at *7 (N.D.N.Y. Sept. 11, 2012); *see also White v. City of New York*, No. 13-CV-7156, 2014 WL 4357466, at *1 n.2 (S.D.N.Y. Sept. 3, 2014) ("[I]n cases where a *pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside of the complaint to the extent they are consistent with the allegations in the complaint." (alteration in original) (quoting *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004))); *Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (considering allegations contained in *pro se* plaintiff's opposition to defendants' motion to dismiss).

In considering defendants' motion to dismiss, this Court considers the facts alleged in plaintiff's complaint (Dkt. 1) as well as the materials plaintiff submitted in response to defendants' motion to dismiss (*see* Dkts. 19, 22, 24).

**DISCUSSION**

The Court construes plaintiff's complaint as alleging two § 1983 claims for alleged constitutional violations committed by defendants in connection with the October 5th attack and subsequent disciplinary hearing.  Specifically, the Court construes plaintiff's allegations against Bouchard, Johnson, and O'Connor in connection with the October 5th inmate-on-inmate attack as an Eighth Amendment failure-to-protect claim, and plaintiff's allegations relating to Hickey's conduct in connection with plaintiff's subsequent disciplinary proceeding as a Fourteenth Amendment procedural due process claim.

**I.    Motion to Strike Plaintiff's Sur-Reply**

Defendants request that the Court "disregard" plaintiff's sur-reply (Dkt. 24) on the grounds that it was filed without the Court's permission and dated approximately two months after defendants' motion to dismiss was fully briefed.  *See* Dkt. 25.

In general, "supplemental filings require leave of the court," and "[d]istrict courts have discretion to decide whether to strike or permit a litigant's sur-reply."  *Neary v. Weichert*, 489 F. Supp. 3d 55, 62 (E.D.N.Y. 2020); *see also Endo Pharms. Inc. v. Amneal Pharms., LLC*, No. 12-CV-8060, 2016 WL 1732751, at *9 (S.D.N.Y. Apr. 29, 2016) ("It is beyond dispute that the decision to permit a litigant to submit a [sur-reply] is a matter left to the court's discretion . . . as is the decision to strike a party's filing." (citations omitted)); *Kapiti v. Kelly*, No. 07-CV-3782, 2008 WL 754686, at *1 n.1 (S.D.N.Y. Mar. 12, 2008) (noting that "the decision to permit a litigant to submit a [sur-reply] is a matter left to the Court's discretion" because the Federal Rules of Civil Procedure and the Local Civil Rules do not specifically authorize litigants to file sur-replies), *aff'd*, No. 07-CV-3782, 2008 WL 1882652 (S.D.N.Y. Apr. 28, 2008).  "Allowing parties to submit [sur-replies] is not a regular practice that courts follow, because such a

10

procedure has the potential for placing a court 'in the position of refereeing an endless volley of briefs.'" *Kapiti*, 2008 WL 754686, at *1 n.1 (quoting *Byrom v. Delta Fam. Care-Disability and Survivorship Plan*, 343 F. Supp. 2d 1163, 1188 (N.D. Ga. 2004)).

Here, although plaintiff did not seek the Court's permission to file his sur-reply, plaintiff is proceeding *pro se* and the Court must construe his filings liberally. *See Neary*, 489 F. Supp. 3d at 63 ("While Plaintiff neither sought nor received permission from the Court to file a sur-reply to Defendants' motion to dismiss, Plaintiff is proceeding *pro se* and the Court construes his supplemental filings liberally."). Further, plaintiff's sur-reply does not prejudice defendants because it "largely repeats arguments" plaintiff previously raised and "defendants do not argue otherwise." *Id.* (cleaned up). Accordingly, the undersigned recommends that the Court exercise its discretion to consider plaintiff's sur-reply and deny defendants' motion to strike the sur-reply. *See id.*

## II.    Failure to Exhaust Administrative Remedies

Defendants move to dismiss both of plaintiff's § 1983 claims on the grounds that plaintiff failed to exhaust the available administrative remedies before filing suit, as required by the PLRA. *See* Defs.' Mem. at 6–10.

The PLRA requires an inmate to exhaust available administrative remedies before bringing an action in federal court. 42 U.S.C. § 1997e(a); *see Taylor v. Swift*, 21 F. Supp. 3d 237, 241 (E.D.N.Y. 2014). This exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "The requirement to exhaust administrative remedies is 'mandatory' and 'unexhausted claims cannot be brought in court.'" *Grafton v. Hesse*, No. 15-CV-4790, 2017 WL 9487092, at *5 (E.D.N.Y. Aug. 25, 2017) (quoting *Jones v. Bock*, 549 U.S. 199, 211 (2007)),

11

*report and recommendation adopted sub nom. Grafton v. Assistant Deputy Undersheriff Hesse*, 2017 WL 4286266 (E.D.N.Y. Sept. 27, 2017), *aff'd sub nom. Grafton v. Hesse*, 783 F. App'x 29 (2d Cir. 2019); *see also Ross v. Blake*, 578 U.S. 632, 639 (2016) (holding that a court may not excuse an inmate's failure to exhaust administrative remedies even to take "special circumstances" into account). "Proper exhaustion" generally requires "using all steps that the agency holds out, and doing so properly." *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)).

"Failure to exhaust administrative remedies is an affirmative defense under the PLRA" rather than a jurisdictional bar. *Williams v. Correction Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). Thus, "inmates are not required to specially plead or demonstrate exhaustion in their complaints," *Jones*, 549 U.S. at 216, and "a motion to dismiss . . . for failure to exhaust is 'appropriate only where nonexhaustion is apparent from the face of the complaint,'" *Grafton*, 2017 WL 9487092, at *6 (quoting *Jandres v. Armor Health Care Inc.*, No. 12-CV-3132, 2014 WL 1330655, at *3 (E.D.N.Y. Mar. 31, 2014)).

Here, defendants argue that plaintiff failed to exhaust the available administrative remedies prior to commencing this action. *See* Defs.' Mem. at 6–10. The SCCF Rules & Regulations provide for a formal grievance procedure. *See id.* at 7–8. Even though plaintiff filed 21 grievances during his time at SCCF consistent with the SCCF Rules & Regulations, plaintiff, according to defendants, "failed to file a single one regarding the allegations set forth in the Complaint." *Id.* at 9.

Plaintiff, for his part, concedes that he did not file any grievances regarding either the October 5th attack or the subsequent disciplinary hearing. *See* Pl.'s Opp'n Mem. at ECF pages 9–12. However, plaintiff requests that the Court excuse his failure to exhaust administrative

12

remedies on the grounds that he "never received a copy of the inmate rule[s] and regulation handbook" and that he "was not aware of [any] such [grievance] process that was contained in the inmate rules and regulations handbook" relating to "a[n] attack that a correctional official failed to prevent."[4]  *Id.* at ECF page 11 (Point II ¶ 9); *see* Pl.'s Sur-Reply at ECF pages 11–12 (Point II ¶¶ 4, 12).  Plaintiff also appears to suggest that he did not have "access to the [applicable] forms and or plain white paper to [initiate] a grievance . . . ."  Pl.'s Opp'n Mem. at ECF page 11 (Point II ¶ 7); *see also* Pl.'s Sur-Reply at ECF page 13 (Point II ¶¶ 15, 16).  Finally, plaintiff contends that he was not required to file a grievance regarding the disciplinary proceeding because "[t]hese issues are only to be exhausted by a disciplinary appeal" and "[an] individual is prohibited from filing a grievance and appeal about any disciplinary proceeding and disciplinary disposition by way of [a] grievance when there is provided a different mechanism to challenge [the] imposed determination."  Pl.'s Opp'n Mem. at ECF page 12 (Point II ¶¶ 14, 15).

The Court considers whether to excuse plaintiff's failure to exhaust the available administrative remedies.  Although the judicial exceptions to the PLRA's exhaustion requirement are no longer recognized, the PLRA "contains its own, textual exception to mandatory exhaustion."  *Ross*, 578 U.S. at 642.  Specifically, "the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies:  An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones."  *Id.* (alteration in original).  In this context, the Supreme Court has discussed "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief."  *Id.* at 643.

---

[4] Defendants have proffered evidence to support their claim that plaintiff was aware of, and in fact often made use of, the grievance procedure.  *See* Dkt. 14-6.  However, as noted above, the Court cannot consider defendants' exhibits at the motion to dismiss stage, *see Ebomwonyi*, 473 F. Supp. 3d at 345, in particular because defendants failed to provide the *pro se* plaintiff—Randolph—with the required notice pursuant to Local Civil Rule 12.1, *see Scott*, 2010 WL 3785252, at *5.

First, "an administrative [remedy] is unavailable when . . . it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, an administrative remedy is unavailable when it is "so opaque that it becomes, practically speaking, incapable of use" such that "no ordinary prisoner can discern or navigate it." *Id.* at 643–44. Finally, an administrative remedy is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644; *see also Williams*, 829 F.3d at 123 n.2 (noting that the "three circumstances discussed in *Ross* do not appear to be exhaustive").

Construing plaintiff's allegations liberally, at this stage of the proceedings, this Court finds that plaintiff has alleged a plausible exception to the PLRA's exhaustion requirement. Specifically, plaintiff alleges that the grievance procedure was not available to him in this instance because the prison officers at SCCF thwarted his ability to file a grievance by failing to provide him with "unhinged access to forms and or plain white paper to [initiate] a grievance." Pl.'s Opp'n Mem. at ECF page 11 (Point II ¶ 7). Plaintiff further alleges that, following the disciplinary hearing, Hickey "failed to provide the plaintiff with a way to appeal the decision that was rendered after the disciplinary proceeding on October 26th, 2022." *Id.* at ECF page 14 (Point III ¶ 7). Even though the parties dispute whether plaintiff should have filed grievances in connection with the claims alleged in this action, at this early stage of the proceedings, pre-discovery, this Court recommends excusing plaintiff's failure to exhaust administrative remedies, and further recommends denying defendants' motion to dismiss to the extent they argue that plaintiff failed to exhaust his administrative remedies.

### III.   Plaintiff's Failure-to-Protect Claim

Defendants move to dismiss plaintiff's failure to protect claim on the grounds that

plaintiff failed to plead adequately that defendants "deliberately ignored a known risk" to plaintiff.  Defs.' Mem. at 2.  To state a failure to protect claim, a plaintiff must allege that "prison officials act[ed] with deliberate indifference" to plaintiff's safety.  *Stewart v. Medina*, No. 23-CV-880, 2024 WL 3106770, at *4 (S.D.N.Y. June 20, 2024) (internal quotation marks and citation omitted).  "Failure-to-protect claims have two prongs:  an objective prong and a subjective prong."  *Id.*  The objective prong requires a plaintiff to demonstrate that "he [was] incarcerated under conditions posing a substantial risk of serious harm."  *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996).

The subjective prong requires a plaintiff to show that "the defendant prison officials possessed sufficient culpable intent."  *Id.*  Specifically, to satisfy the subjective prong, "a plaintiff must plausibly allege the defendant[s] knew of a substantial risk of serious harm to the inmate and disregarded that harm by failing to take reasonable measures to abate it."  *Stewart*, 2024 WL 3106770, at *4.  In other words, "[t]he defendant officer[s] 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference.'"  *Id.* (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 107 (2d Cir. 2000)).  When applying these standards, "Courts routinely deny deliberate indifference claims based upon surprise attacks," *Paris v. N.Y. Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 363 (S.D.N.Y. 2013), and "[m]ere negligence by a prison officer does not establish a claim for 'deliberate indifference' to [a] prisoner's safety," *Fernandez v. N.Y.C. Dep't of Corr.*, No. 08-CV-4294, 2010 WL 1222017, at *4 (S.D.N.Y. Mar. 29, 2010).  Alternatively, to establish a failure to protect claim based on a theory that "prison conditions posed a generalized threat to the safety of all inmates," a plaintiff "must plead facts" in support of the following elements:

(1) there were numerous other inmate-on-inmate attacks in the [prison] yard; (2) these attacks posed a substantial risk of serious harm to inmates; (3) the

15

> Defendants knew about these prior attacks; (3) despite their knowledge of the prior attacks, Defendants failed to take steps to reduce the risk of harm to inmates; (4) the prior attacks and the [attack on the plaintiff] were similar enough that any steps Defendants could have taken to alleviate the danger posed by the other attacks would also have reduced the risk to [plaintiff]; and (5) if Defendant[s] had taken such steps, [plaintiff] would not have been [attacked] . . . .

*Coronado v. Goord*, No. 99-CV-1674, 2000 WL 1372834, at *5–6 (S.D.N.Y. Sept. 25, 2000). In other words, "an inmate's communications about 'generalized safety concerns' or 'vague concerns of future assault by unknown individuals' are insufficient to provide knowledge that the inmate is subject to a substantial risk of serious harm." *Anselmo v. Kirkpatrick*, No. 19-CV-0350, 2019 WL 2137469, at *4 (N.D.N.Y. May 16, 2019).

Here, plaintiff alleges that Bouchard, Johnson, and O'Connor were aware that McClinton posed a risk of harm to other inmates (including plaintiff) because they knew that he had been removed previously from another facility and that he was "prescribed mental health medication." *See* Compl. at ECF pages 3–4 (Statement of Facts ¶¶ 8, 9). Defendants argue that plaintiff has failed to allege adequately a failure to protect claim because the allegations set forth in the complaint fail to satisfy both the objective and subjective prongs of a failure to protect claim. Defs.' Mem. at 5 ("Plaintiff has failed to demonstrate that Defendants Bouchard, Johnson, and O'Connor had knowledge that Plaintiff faced a substantial risk of serious harm and that they disregarded that risk by failing to take reasonable measures to abate the harm.").

The Court agrees with defendants. Plaintiff alleges that the defendants were "aware" that an attack involving "this specific individual" (*i.e.*, McClinton) would occur in the "fores[e]eable future." Pl.'s Opp'n Mem. at ECF page 7 (Reply to Defendant[s'] Points ¶ 4). However, plaintiff does not allege that defendants were aware that *plaintiff* was at particular risk of attack. *See* Defs.' Mem. at 5 ("Nowhere in the Complaint did Plaintiff allege that Defendants Bouchard, Johnson and O'Connor were ever aware that *Plaintiff* was at risk of attack by another inmate."

(emphasis added)).  Plaintiff does not allege that even he was aware of a potential attack on him by McClinton.  Rather, plaintiff merely alleges that defendants were aware that McClinton took medications for mental health issues (as do other incarcerated individuals), was "tied to active gang activities," and had previously been removed from another correctional facility.  Compl. at ECF pages 3–4 (Statement of Facts ¶¶ 8, 9, 11); *see also* Pl.'s Sur-Reply at ECF page 4 (Point I ¶ 7) ("The defendant[s] possessed the institutional information that the attacker had a violent history and mental health history.").

These facts alone are insufficient to establish either that plaintiff faced a substantial risk of serious harm (the objective prong) or that defendants were aware of and disregarded such risk (the subjective prong). *See Stewart*, 2024 WL 3106770, at *5 ("Absent allegations that defendant knew of a prior altercation between . . . plaintiff [and his assailant], or knew [plaintiff's assailant] was armed with a knife at the time, or knew a threat of physical harm had been made against plaintiff, or knew of a broader pattern of physical altercations among inmates similar to the one suffered by plaintiff, the amended complaint alleges only a 'surprise attack,' which cannot sustain a failure-to-protect claim.").  Although a plaintiff may establish a failure to protect claim by establishing that "prison conditions posed a generalized threat to the safety of all inmates," plaintiff has failed to allege the necessary elements to support a failure to protect claim based on a "general threat of harm" theory. *See Coronado*, 2000 WL 1372834, at *5–6.  For these reasons, this Court recommends dismissing plaintiff's failure to protect claim with leave to amend should plaintiff wish to address the issues raised herein. *See Fredricks v. Debra*, No. 21-CV-6251, 2022 WL 125815, at *2 (E.D.N.Y. Jan. 13, 2022) (Kovner, J.) ("If a 'liberal reading of the complaint gives any indication that a valid claim might be stated,' a *pro se* plaintiff should be given an opportunity to amend the complaint." (quoting *Cuoco v. Moritsugu*,

222 F.3d 99, 112 (2d Cir. 2000))).

## IV.   Plaintiff's Due Process Claim

Defendants move to dismiss plaintiff's due process claim against Hickey on the grounds that plaintiff failed to establish Hickey's personal involvement in the alleged due process violations.  *See* Defs.' Mem. at 11–12.

"As a fundamental prerequisite '[t]o establish[ing] a § 1983 claim, a plaintiff must show the defendants' personal involvement in the alleged constitutional violation.'"  *Jackson v. Polizzi*, No. 20-CV-03105, 2021 WL 5909979, at *3 (S.D.N.Y. Dec. 13, 2021) (alterations in original) (quoting *Boley v. Durets*, 687 F. App'x 40, 41 (2d Cir. 2017)).  In so doing it is not enough to establish that a defendant possessed supervisory authority with regards to the relevant proceeding.  *See id.*  Rather, a plaintiff must establish that defendant, "through [his or her] own individual actions, has violated the Constitution."  *Tangreti v. Bachmann*, 983 F.3d 609, 612 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).  Moreover, "[f]ailing to allege that a defendant was personally involved in, or responsible for, the conduct complained of renders a complaint 'fatally defective on its face.'"  *Swinson v. City of New York*, No. 19-CV-11919, 2022 WL 142407, at *4 (S.D.N.Y. Jan. 14, 2022) (quoting *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987)).

Here, plaintiff alleges that "John Hickey was the hearing officer that conducted the [disciplinary] proceeding," and that Hickey failed to acknowledge that plaintiff had not been notified of the hearing in a timely manner.  *See* Pl.'s Opp'n Mem. at ECF page 4 (Statement of Facts ¶ 5).  Plaintiff further alleges that Hickey denied plaintiff's request to present exculpatory evidence at the hearing, including video evidence that—according to plaintiff—would have shown that McClinton initiated the fight and that plaintiff was unable to defend himself.  *See*

Compl. at ECF page 5 (Statement of Facts ¶ 15); Pl.'s Opp'n Mem. at ECF page 4 (Statement of Facts ¶ 7) ("defendant [Hickey[5]] failed to . . . allow the Plaintiff to present documented evidence, witness[es] and videotape [footage] that [was] . . . material to a not guilty disposition."); Pl.'s Opp'n Mem. at ECF page 18 (¶ 3) ("defendant [Hickey[6]] failed to allow the plaintiff the opportunity to present evidence that reflect[ed] that the plaintiff was attacked on video and that the plaintiff did not receive a copy of the misbehavior report.").  Finally, plaintiff alleges that he "was not [allowed] a[n] opportunity to exercise the right to appeal the disposition and sanctio[n]s . . . *imposed by the defendant, hearing officer John Hickey*," Pl.'s Opp'n Mem. at ECF page 4 (Statement of Facts ¶ 8) (emphasis added), and that "[t]he defendant, *John Hickey* . . . failed to provide the plaintiff with a way to appeal the decision that was rendered after the disciplinary proceeding on October 26, 2022," *id.* at ECF page 14 (Point III ¶ 7) (emphasis added).

Based on these allegations, this Court disagrees with defendants' contention that plaintiff failed to allege Hickey's personal involvement in the alleged violations and that plaintiff merely made "a conclusory argument that since Defendant Hickey was the hearing officer, he was personally involved in the deprivation of Plaintiff's constitutional rights." Defs.' Reply Br. at 4. Rather, as noted above, plaintiff alleges that Hickey failed to allow plaintiff the opportunity to present exculpatory evidence at the hearing, and thereafter failed to afford plaintiff the opportunity to appeal.  Although plaintiff does not specifically allege Hickey's involvement "in the four corners of his Complaint," *see* Defs.' Reply Br. at 3, the Court may consider plaintiff's

---

[5] Although plaintiff does not specifically reference Hickey in paragraph 7, he appears to be using the term "defendant" (singular) in this paragraph to refer specifically to Hickey, who was mentioned in paragraph 5 of the same section.  Thus, construing plaintiff's allegations liberally, this Court considers the references to "defendant" to refer to Hickey in paragraphs 5 through 8 of plaintiff's Statement of Facts in his Opposition Brief. *See* Pl.'s Opp'n Mem. at ECF page 4.

[6] Similarly, on ECF pages 17 through 18, in the section relating to "the personal involvement of the defendant John Hickey as a hearing officer," plaintiff initially refers to Hickey by name, but then refers to him generally as "defendant." *See* Pl.'s Opp'n Mem. at ECF pages 17–18.

subsequent filings as effectively amending the complaint. *See Solomon*, 2012 WL 3996875, at *7 ("[I]n the Second Circuit, a *pro se* plaintiff's papers [filed] in response to a defendant's motion to dismiss for failure to state a claim may be considered as effectively amending the allegations of his complaint . . . to the extent those papers are consistent with the allegations in the complaint."); *White*, 2014 WL 4357466, at *1 n.2 ("[I]n cases where a *pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside of the complaint to the extent they are consistent with the allegations in the complaint." (alteration in original) (quoting *Donhauser*, 314 F. Supp. 2d at 121)).

At this stage of the proceedings, pre-discovery, this Court finds that plaintiff has sufficiently alleged the personal involvement of Hickey in connection with the due process claim arising out of plaintiff's disciplinary hearing, and recommends denying defendants' motion to dismiss plaintiff's due process claim.[7]

### CONCLUSION

For the reasons set forth above, this Court respectfully recommends granting defendants' motion to dismiss without prejudice and with leave to amend plaintiff's failure-to-protect claim against Bouchard, Johnson, and O'Connor, and denying defendants' motion to dismiss the due process claim against Hickey.

Any objections to the recommendations made in this Report must be filed with the Honorable Rachel P. Kovner within **14 days** after the filing of this Report and Recommendation and, in any event, on or before **February 25, 2025**. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

---

[7] Defendants seek dismissal of the due process claim against Hickey solely based on Hickey's alleged lack of "personal involvement" in plaintiff's disciplinary proceedings. *See* Defs.' Mem. at 11–12. In their motion, defendants do not challenge the sufficiency of plaintiff's due process claim and, in light of the limited basis for which Hickey seeks dismissal of the claim against him, this Court does not address whether plaintiff's allegations in connection with the disciplinary hearing implicate a protected liberty interest sufficient to raise a due process claim.

72(b)(2).  Failure to file timely objections may waive the right to appeal the District Court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam) (discussing waiver under the former ten-day limit).

The Clerk's Office is directed to enter this Report and Recommendation into the ECF system and to serve a copy upon the *pro se* plaintiff by first-class mail.

**SO ORDERED**

Dated: Brooklyn, New York
      February 11, 2025

s/ James R. Cho
James R. Cho
United States Magistrate Judge

21